**Affirmed and Memorandum Opinion filed December 22, 2016.**



In The

# Fourteenth Court of Appeals

## NO. 14-15-00134-CV

### AGAR CORPORATION, INC., Appellant

### V.

### ELECTRO CIRCUITS INTERNATIONAL, LLC AND SURESH PARIKH, Appellees

**On Appeal from the 11th District Court
Harris, Texas
Trial Court Cause No. 2008-20480A**

## M E M O R A N D U M   O P I N I O N

Agar Corporation, Inc. appeals two orders in which the trial court (1) granted summary judgment in favor of appellees Electro Circuits International, LLC and Suresh Parikh on Agar's claims against them; and (2) awarded attorney's fees to Electro Circuits and Parikh under the Texas Theft Liability Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 134.001-.005 (Vernon 2011 & Supp. 2016). Electro Circuits and Parikh cross-appeal to challenge the trial court's order

granting summary judgment in favor of Agar on their claim for additional attorney's fees based upon Agar's asserted breach of a release. We affirm.

## BACKGROUND

This commercial dispute involves the alleged misappropriation of trade secrets relating to measurement and control devices that Agar designs, manufactures, and sells for use in the oil and gas industry. Agar contends two former employees, Sanjay Shah and Pandurang Nayak, conspired with many other persons and entities to obtain and use its trade secrets to sell knockoff Agar devices.

Agar sued more than a dozen individuals and entities in April 2008 including the two former Agar employees; it added Electro Circuits and Parikh as defendants to the existing lawsuit in a sixth amended petition filed in November 2011. That lawsuit was docketed as Cause No. 2008-20480.

In its seventh amended petition filed on February 10, 2012, Agar asserted claims against Electro Circuits and Parikh for tortious interference, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, fraud, fraud by non-disclosure, misappropriation of trade secrets, violations of the Texas Theft Liability Act, conversion, and civil conspiracy. Agar sought actual and exemplary damages.[1] Electro Circuits and Parikh answered and filed a counterclaim against Agar seeking attorney's fees based upon (1) the Texas Theft Liability Act; and (2) Agar's asserted breach of a "Mutual Release and Settlement Agreement" dated December 20, 2009.

Electro Circuits and Parikh filed a no-evidence motion for summary

---

[1] Agar asserted additional claims against defendants other than Electro Circuits and Parikh.

2

judgment under Texas Rule of Civil Procedure 166a(i) in September 2013. In the motion, they (1) identified each element of each claim asserted against them; and (2) contended that Agar lacked evidence on all specified elements of all claims. They also contended: "[T]o prevail on a civil conspiracy claim[,] the plaintiff must show that the defendant was liable for some underlying tort." Electro Circuits and Parikh combined their no-evidence motion with a motion for summary judgment under Texas Rule 166a(b); among other grounds, they sought a traditional summary judgment based on their affirmative defenses of release and the statute of limitations.

In its response to the combined motion, Agar contended that summary judgment was not warranted because (1) Electro Circuits and Parikh "are liable as co-conspirators of Defendants Sanjay Shah and Pandurang Nayak and their respective companies;" (2) specific portions of evidence attached to the response raise fact questions regarding the liability of Electro Circuits and Parikh as co-conspirators; (3) unspecified evidence attached to separate summary judgment motions and responses filed by Agar in relation to other defendants "clearly show[s] there was a fact issue on each of [Agar's] claims that it has also asserted against" Electro Circuits and Parikh; (4) Electro Circuits and Parikh were not parties to or third-party beneficiaries of the release agreement they invoked, so they could not rely on it to obtain attorney's fees; and (5) limitations does not bar Agar's claims against Electro Circuits and Parikh because the discovery rule tolls accrual of those claims.

The trial court signed an order on October 10, 2013, in which it granted the combined summary judgment motion in its entirety. After Agar moved for reconsideration, the trial court signed an order on December 20, 2013, in which it (1) denied the no-evidence motion for summary judgment as to Agar's claim for

civil conspiracy; (2) granted the no-evidence motion in favor of Electro Circuits and Parikh "as to all other claims [by Agar] alleging direct liability;" and (3) granted "a traditional summary judgment on Plaintiff's claims against Defendants Electro Circuits International, LLC and Suresh Parikh only on the limited basis as to [their] . . . affirmative defense of statute of limitations." The trial court's order states as follows:

> The Court further finds the last overt act for limitations purposes regarding the conspiracy claim to be on July 3, 2009. Further, although the reasoning for the holding seems suspect, the cases from the Houston Court of Appeals clearly hold that the two year statute of limitations applies to conspiracy claims independent of whether the underlying tort has a longer limitations period. Since there is no evidence of any overt act within the two years prior to Electro Circuits and Suresh Parikh being named as Defendants, the Court feels compelled to grant the motion.

With respect to the traditional motion, the order also states as follows: "Plaintiff's claims against Defendants Electro Circuits International, LLC and Suresh Parikh are dismissed solely on the basis of the affirmative defense of statute of limitations."[2]

On April 9, 2014, the trial court signed an order granting a motion by Electro Circuits and Parikh to sever the claims among Agar, Electro Circuits, and Parikh from the original Cause No. 2008-20480. The order states Agar "was unopposed to the Motion . . ." and reflects at the bottom that Agar's counsel approved the severance order "as to form only. . . ." The December 20, 2013 order became part of the severed case under Cause No. 2008-20480-A. No final judgment existed in the severed case at this point because Electro Circuits and

---

[2] Agar filed an eighth amended petition in February 2014; by that time, all claims asserted against Electro Circuits and Parikh already had been disposed of by the December 20, 2013 order.

4

Parikh still had unresolved claims against Agar for attorney's fees.

Following severance, Electro Circuits and Parikh filed a second motion for summary judgment in June 2014 on their claims against Agar for attorney's fees. They sought traditional summary judgment in their favor on grounds that (1) they are prevailing parties under the Texas Theft Liability Act; and (2) they are entitled to fees because Agar breached the release when it sued Electro Circuits and Parikh. They supported this motion with an attorney's fees affidavit signed by attorney Ken Krock, which included detailed time sheets reflecting hours expended and billable rates for the attorneys representing Electro Circuits and Parikh. According to this affidavit, Electro Circuits and Parikh incurred $79,167.50 in fees in connection with Agar's claims. Of this amount, the affiant attributed $64,307.44 to the Texas Theft Liability Act claim. The trial court denied this motion in an order signed on August 11, 2014.

For its part, Agar filed a combined traditional and no-evidence motion for summary judgment in the severed case in August 2014 (and again in September 2014) on the unresolved claims for attorney's fees. The trial court also denied this motion on November 5, 2014.

On November 6, 2014, the trial court signed an order vacating its prior order denying the summary judgment motion of Electro Circuits and Parikh on attorney's fees.

The trial court signed a "Modified Order Constituting Final Judgment" in the severed case on January 20, 2015, in which it awarded $64,307.44 in attorney's fees to Electro Circuits and Parikh as prevailing parties under the Texas Theft Liability Act; the order conditionally awarded additional fees in the event of an appeal or a petition for review. The modified order denied any fee award in connection with the release. The modified order also granted Agar's motion for

no-evidence and traditional summary judgment in part with respect to the claim for attorney's fees arising from the release. Taken together with the December 20, 2013 order, the January 20, 2015 order disposed of all parties and claims in the severed action docketed as Cause No. 2008-20480-A.

Agar appeals from the trial court's summary judgment order in favor of Electro Circuits and Parikh signed on December 20, 2013; Agar also appeals from the modified order signed on January 20, 2015, to challenge the award of attorney's fees to Electro Circuits and Parikh as prevailing parties under the Texas Theft Liability Act. Electro Circuits and Parikh cross-appeal from the January 20, 2015 modified order to challenge the denial of additional attorney's fees to them based on Agar's asserted breach of the release.

### STANDARDS OF REVIEW

We review the trial court's grant of summary judgment *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

In reviewing either a no-evidence or traditional summary judgment motion, we must take as true all evidence favorable to the non-movant and draw every reasonable inference and resolve all doubts in favor of the non-movant. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23-24 (Tex. 2000) (per curiam); *Mendoza v. Fiesta Mart, Inc.*, 276 S.W.3d 653, 655 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

A no-evidence motion for summary judgment is essentially a motion for a pretrial directed verdict. Tex. R. Civ. P. 166a(i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). After an adequate time for discovery, a party without the burden of proof may, without presenting evidence, seek summary judgment on the ground that there is no evidence to support one or more essential

6

elements of the non-movant's claim or defense. Tex. R. Civ. P. 166a(i). The non-movant is required to present evidence raising a genuine issue of material fact supporting each element contested in the motion. *Id.*; *Timpte Indus.*, 286 S.W.3d at 310.

The party moving for a traditional summary judgment must show that no material fact issue exists and that it is entitled to summary judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Willrich*, 28 S.W.3d at 23. To be entitled to traditional summary judgment, a defendant must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

ANALYSIS

## I.  Summary Judgment in Favor of Electro Circuits and Parikh

Agar's appellate briefing challenges the trial court's summary judgment orders on the following grounds.

1. The trial court erred in granting a limitations-based traditional summary judgment because the summary judgment evidence raises a fact issue under the discovery rule.

2. Electro Circuits and Parikh cannot recover attorney's fees as prevailing parties under the Texas Theft Liability Act because the trial court erroneously granted traditional summary judgment on limitations.

7

3. Electro Circuits and Parikh cannot recover attorney's fees as prevailing parties under the Texas Theft Liability Act by prevailing on an affirmative defense.

4. Electro Circuits and Parikh cannot recover attorney's fees as prevailing parties under the Texas Theft Liability Act because they did not obtain tangible relief on the merits and a statute of limitations defense does not directly address the merits of a claim.

5. The fee affidavit is deficient and cannot support a fee award.

6. The limitations period for civil conspiracy should be based on the period applicable to the underlying tort.

Agar does not challenge the trial court's grant of a no-evidence summary judgment "as to all other claims alleging direct liability" against Electro Circuits and Parikh. As its arguments are postured on appeal, Agar pursues only a single civil conspiracy claim against Electro Circuits and Parikh.

### A. Conspiracy

A civil conspiracy generally is defined as "a combination of two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means . . . ." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996) (citing *Carroll v. Timmers Chevrolet, Inc.*, 592 S.W.2d 922, 925 (Tex. 1979)).

Civil conspiracy is considered a "derivative tort" because the defendant's conspiracy liability depends on participation in some underlying tort for which the plaintiff seeks to hold the defendant liable. *See id.*; *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 864 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

As Agar correctly notes in its brief, "[C]onspiracy is not a stand[-]alone cause of action." Agar also noted in its summary judgment response that "conspiracy [is] . . . not a cause of action but a theory of liability . . . ." Agar does not challenge on appeal the grant of a no-evidence summary judgment on all

8

claims alleging direct liability against Electro Circuits and Parikh. Agar nonetheless contends the necessary underlying torts exist because Electro Circuits and Parikh conspired with other persons and entities who committed tortious acts.

We assume solely for argument's sake that Agar can pursue a viable civil conspiracy claim against Electro Circuits and Parikh under these circumstances. Even with the benefit of this assumption, we conclude that summary judgment was proper with respect to conspiracy based upon limitations.

### 1. Two-year statute of limitations

We first address Agar's sixth issue, which raises a threshold argument regarding the length of the limitations period.

Agar contends that the operative limitations period for a conspiracy claim should be based on the limitations period applicable to the underlying tort. As Agar acknowledges, this court already has held that a two-year limitations period governs conspiracy claims even if a longer statute-of-limitations period applies to the underlying tort. *See Navarro v. Thornton*, 316 S.W.3d 715, 719 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *Mayes v. Stewart*, 11 S.W.3d 440, 453 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 16.003 (Vernon 2002 & Supp. 2016). As Agar also acknowledges, neither the Supreme Court of Texas nor this court sitting en banc has reached a contrary conclusion, and there has been no intervening, material change in the statutory law that would affect these prior panel decisions. Therefore, this panel is bound by prior panel holdings on this point. *See Chase Home Fin., L.L.C. v. Cal. W. Reconveyance Corp.*, 309 S.W.3d 619, 630 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

We overrule Agar's sixth issue.

## 2. Propriety of granting traditional summary judgment

In connection with its first issue, Agar assails the trial court's grant of traditional summary judgment on grounds that Agar's civil conspiracy claim is barred by the two-year statute of limitations.

Agar initially sued more than a dozen defendants in April 2008 in connection with the defendants' alleged misappropriation of Agar's proprietary information and use of that information to create knock-off products for sale to Agar's customers. Agar added alleged co-conspirators Electro Circuits and Parikh as defendants to the existing lawsuit in November 2011 — more than three years after Agar initially filed suit.

The statute of limitations begins to run when a claim accrues. *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990). A claim generally accrues when a wrongful act causes injury. *Id*. Intermediate appellate courts in Texas have addressed an exception to the general accrual rule with respect to a continuing tort; under this exception, when wrongful conduct is repeated over time, each wrongful act can create a separate claim that does not accrue until the conduct ends. *See, e.g., Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp.*, 53 S.W.3d 799, 81 (Tex. App.—Austin 2001, pet. denied); *Upjohn Co. v. Freeman*, 885 S.W.2d 538, 542 (Tex. App.—Dallas 1994, writ denied). "We note that the continuing-tort doctrine has been addressed by several courts of appeals but not adopted by the Texas Supreme Court." *Markwardt v. Tex. Indus., Inc.*, 325 S.W.3d 876, 893 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *see also Creditwatch Inc. v. Jackson*, 157 S.W.3d 814, 816 n.8 (Tex. 2005).

The trial court granted a limitations-based summary judgment in favor of Electro Circuits and Parikh on the conspiracy claim after concluding that "the last overt act for limitations purposes regarding the conspiracy claim [occurred] . . . on

July 3, 2009." This date corresponds to a purchase order showing the sale in Texas of alleged counterfeit devices by former Agar employee Pandurang Nayak and an entity named "JAK Instruments" to Wilbur Eagle Technology in India; the purchase order on its face makes no reference to Electro Circuits or Parikh. The trial court further concluded as follows: "Since there is no evidence of any overt act within the two years prior to Electro Circuits and Suresh Parikh being named as Defendants, the Court feels compelled to grant the motion."

Agar contends that "the last overt act in furtherance of the conspiracy" occurred on July 3, 2009. In its summary judgment response, Agar argued that "JAK Instruments was still [s]elling parts to Wilbur Eagle Technology containing [Agar's] . . . trade secrets as late as July 3, 2009." According to Agar's appellate briefing, the purchase order created on this date reflects "the sale of goods including [Agar's] . . . stolen trade secrets, which was a 'continued invasion of the plaintiff's interest causing loss and damage.'" Agar contends that the district court erred in granting summary judgment because (1) Agar did not learn of the July 2009 purchase order until it was produced in discovery on March 30, 2011; and (2) limitations therefore began running in March 2011 with respect to its claim against Electro Circuits and Parikh for conspiring with others to steal its trade secrets. Based upon a March 2011 accrual date, Agar contends that it timely sued Electro Circuits and Parikh in November 2011 even under a two-year statute of limitations.

Agar's contentions regarding "the last overt act" and a "continued invasion" of its interest in its trade secrets throughout the alleged conspiracy are grounded on this statement in *Mayes*: "'[U]nder civil conspiracy, each continued invasion of the plaintiff's interest causing loss and damage in a conspiracy case is treated as an independent element for limitations purposes and the two year statute of limitations begins to run when each independent element arises.'" *Mayes*, 11 S.W.3d at 453

11

(quoting *Cathey v. First City Bank*, 758 S.W.2d 818, 822 (Tex. App.—Corpus Christi 1988, writ denied)).  Neither *Mayes* nor *Cathey* involved claims of a conspiracy to steal trade secrets.

Despite Agar's references to "the last overt act" and a "continued invasion" of its interests by these alleged conspirators, Agar nonetheless disclaims any intent to invoke a continuing tort theory to delay accrual of its conspiracy claim. According to Agar, it "has simply relied on the discovery rule solely, but with respect to its conspiracy claims."  In Agar's seventh amended petition, Agar alleges that it did not know "the nature of its injury and the likelihood it was caused by the wrongful acts of" Electro Circuits and Parikh until November 2011.

Electro Circuits and Parikh argue that Agar cannot invoke the discovery rule to postpone accrual.  *See Russell v. Ingersoll-Rand Co.*, 841 S.W.2d 343, 344 n.3 (Tex. 1992) ("Generally . . . 'limitations begin to run when the fact of injury is known,' not when the alleged wrongdoers are identified.") (quoting *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990)).  According to Electro Circuits and Parikh, "[T]he latest date on which the alleged harm wrongfully caused by the acts of another possibly could have been discovered is the day on which [Agar] . . . filed its lawsuit, April 3, 2008."  Electro Circuits and Parikh also contend that the continuing tort doctrine does not apply "where, as here, the alleged conspiracy resulted in a single, distinct injury . . . ."

Our analysis of the accrual date for Agar's conspiracy claim cannot ignore that claim's posture on appeal.  We must assess accrual for a civil conspiracy claim untethered to any underlying torts committed by Electro Circuits or Parikh.  Given the unchallenged no-evidence summary judgment, Electro Circuits and Parikh individually committed no underlying torts.

Notwithstanding its disclaimer, Agar's arguments relying on a "last overt

12

act" and a "continued invasion" of its rights plainly invoke the continuing tort doctrine and plainly invite us to apply that doctrine to its conspiracy claim against Electro Circuits and Parikh predicated on underlying conduct by others. We take Agar at its word when it invokes these concepts, and when it characterizes the injurious "continued invasion" at issue as "the sale of goods including [Agar's] . . . stolen trade secrets." Agar discovered this injury sufficiently to sue based upon the alleged theft of its trade secrets in 2008 — more than three years before it added Electro Circuits and Parikh to the suit.

"The limitations exception in the continuing-tort doctrine is rooted in a plaintiff's inability to know that the ongoing conduct is causing . . . injury; thus, when the plaintiff discovers [its] . . . injury, the rationale for extending the accrual date no longer applies . . . ." *Walston v. Stewart*, No. 10-05-00135-CV, 2005 WL 3072919, at *1 (Tex. App.—Waco Nov. 16, 2005, pet. denied) (per curiam) (citing *Upjohn*, 885 S.W.2d at 544). "[I]f the alleged continuing tort causes a single, distinct injury–rather than a continuing injury–the continuing-tort doctrine does not apply." *Id.* (citing *Dickson*, 960 S.W.2d at 851; and *Upjohn*, 885 S.W.2d at 543); *see also Rogers v. Ardella Veigel Inter Vivos Trust No. 2*, 162 S.W.3d 281, 290 (Tex. App.—Amarillo 2005, pet. denied) ("[C]are must be taken to distinguish between 1) repeated injury proximately caused by repetitive wrongful or [tortious] . . . acts and 2) continuing injury arising from one wrongful act. While the former evinces a continuing tort, the latter does not.").

Given the nature of the "continued invasion" asserted by Agar, which focuses solely on "the sale of goods including [Agar's] . . . stolen trade secrets," Agar cannot avoid the limitations bar by (1) invoking the continuing tort doctrine to delay accrual of its conspiracy claim against Electro Circuits and Parikh, and then (2) tacking on a discovery rule argument to delay accrual still longer. The

first step fails. *See Rogers*, 162 S.W.3d at 290 ("[A] continuing tort does not arise from one's copyrighting a song that another wrote and then repeatedly selling the song and reaping profit from each sale. While it may be said that the injury continues with each sale and receipt of a royalty, the act that caused the continuing injury was the one act of copyrighting the song."); *cf.* Tex. Civ. Prac. & Rem. Code Ann. § 16.010(b) (Vernon 2002) ("A misappropriation of trade secrets that continues over time is a single cause of action and the limitations period . . . begins running without regard to whether the misappropriation is a single or continuing act."). Agar does not contend that the discovery rule itself would extend accrual long enough to make its conspiracy claim against Electro Circuits and Parikh timely without reliance upon the additional delay afforded by its continuous tort argument.

We overrule Agar's first issue.

### B.    Attorney's Fees Under the Texas Theft Liability Act

Agar makes three related arguments as it challenges the award of attorney's fees to Electro Circuits and Parikh under section 134.005. Agar also attacks the affidavit supporting this fee award.

First, Agar contends the attorney's fee award is erroneous because the trial court erred in granting summary judgment on limitations grounds; in turn, according to Agar, this means Electro Circuits and Parikh cannot be "a person who prevails in a suit under this chapter" for purposes of obtaining attorney's fees under section 134.005. Having already rejected Agar's challenge to the grant of summary judgment on limitations, we reject this contention as well.

Second, Agar contends that Electro Circuits and Parikh "were not prevailing parties under the TTLA by merely avoiding liability under a statute of limitations

14

defense." Third, Agar contends this statute "does not allow a defendant avoiding liability to recover attorney's fees" because a party must recover damages to "prevail[]" under section 134.005. We address these two contentions together.

Agar's second and third contentions fail because Agar erroneously relies on cases addressing a *plaintiff's* inability to recover attorney's fees under the Texas Theft Liability Act in the absence of a monetary recovery. *See, e.g., Kellmann v. Workstation Integrations, Inc.*, 332 S.W.3d 679, 686-87 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *Glattly v. Air Starter Components, Inc.*, 332 S.W.3d 620, 641 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

The circumstances differ here because they involve *defendants* who successfully opposed a plaintiff's Texas Theft Liability Act claim against them. A defendant who defeats a Texas Theft Liability Act claim is a prevailing party and can recover attorney's fees even in the absence of a recovery for actual damages by the defendant. *Air Routing Int'l Corp. (Canada) v. Britannia Airways, Ltd.,* 150 S.W.3d 682, 686 (Tex. App.—Houston [14th Dist.] 2004, no pet.) ("The Theft Act is unusual in Texas law in that it requires the court to award attorney's fees to a party who successfully defends a Theft Act claim, without any prerequisite that the claim is found to be groundless, frivolous, or brought in bad faith."); *see also Arrow Marble, LLC v. Estate of Killion*, 441 S.W.3d 702, 706 (Tex. App.—Houston [1st Dist.] 2014, no pet.) ("Equicap's status defending against a TTLA claim does not prevent recovery of attorney's fees.").

That leaves Agar's challenges to the Krock affidavit as the only remaining route by which it can attack the award of attorney's fees to Electro Circuits and Parikh under section 134.005.

Agar contends that Krock's affidavit is deficient because it does not state that the facts contained in it are true or that perjury can be assigned upon it. Agar

15

does not otherwise challenge the affidavit's sufficiency or contents. Agar further contends that a counter affidavit signed by Dylan Russell raises fact questions regarding the reasonableness and necessity of attorney's fees under section 134.005.

We reject Agar's challenge to the form of Krock's signed affidavit because the affidavit states it is based on Krock's personal knowledge and recites that he made the statements contained therein "upon his oath" after being duly sworn by a notary. In turn, the notary signed and notarized the affidavit. This suffices. *See Ford Motor Co. v. Leggat*, 904 S.W.2d 643, 645-46 (Tex. 1995) (orig. proceeding); *see also* Tex. Gov't Code Ann. §312.011(1) (Vernon 2013).

Lastly, Agar contends it raised a fact issue on the reasonableness and necessity of attorney's fees by filing a controverting affidavit. The Russell affidavit states as follows:

> I have reviewed the summary of work listed as Exhibit M.1 to the Defendants' Motion for Final Summary Judgment and the related affidavit of Mr. Krock, which is Defendant's Exhibit M. It is my opinion that the fees allegedly incurred by the Defendants' firm, in the amount of $79,167.50, relating to all fees incurred through June 30[,] 2014, are not reasonable, necessary, equitable, or just. Additionally, the amount of $64,307.44 in attorney's fees related to purportedly intertwined fees relating to the Texas Theft Liability Act ("TTLA") claim is also not reasonable, necessary, equitable, or just.

Standing alone, these conclusory assertions do not raise a fact issue regarding the reasonableness and necessity of the fees incurred by Electro Circuits and Parikh. *See, e.g., Cammack the Cook, L.L.C. v. Eastburn*, 296 S.W.3d 884, 894-95 (Tex. App.—Texarkana 2009, pet. denied).

The stated supporting rationale for these conclusions does not withstand scrutiny. The Russell affidavit asserts that defense fees claimed in connection with

16

the Texas Theft Liability Act are not reasonable and necessary (1) because Electro Circuits and Parikh were sued in November 2011 but did not file their summary judgment motion until September 2013; and (2) "in light of applicable case law and legislative history regarding the TTLA suggesting that only plaintiffs, not defendants, that recover damages may recover attorney's fees under the TTLA . . . ."

The first stated rationale is insufficient; it ignores Rule 166a(i)'s requirement that an "adequate time for discovery" must pass before a no-evidence motion can be filed. The second stated rationale also is insufficient because it is neither a statement of fact nor a statement of opinion about fact. It is, at most, a pure legal conclusion regarding the Texas Theft Liability Act's provision for recovery of attorney's fees. *See, e.g., Mercer v. Daoran Corp.*, 676 S.W.2d 580, 583 (Tex. 1984) ("A legal conclusion in an affidavit is insufficient to raise an issue of fact in response to a motion for summary judgment . . . ."). Moreover, it is a pure legal conclusion contrary to this court's precedent. *See Air Routing Int'l Corp. (Canada),* 150 S.W.3d at 686.

We overrule Agar's second, third, fourth, and fifth issues.

## II.    Summary Judgment in Favor of Agar on the Release

Electro Circuits and Parikh cross-appeal to challenge the January 20, 2015 summary judgment order insofar as it denies recovery of additional attorney's fees based on Agar's asserted breach of the "Mutual Release and Settlement Agreement" dated December 20, 2009. They contend traditional summary judgment was not warranted because (1) the release applies to Electro Circuits and Parikh as a matter of law; (2) they are entitled to fees because Agar breached the release by suing them; and (3) at a minimum, a fact issue exists regarding the status of Electro Circuits and Parikh as "affiliates" of the parties being released by

17

Agar.

The December 2009 Mutual Release and Settlement Agreement identifies the "Parties" to that agreement as Agar Corporation, Inc.; Girish Parikh;[3] and SGM Corporation d/b/a V-J Electronic Assemblies. It is signed by a "Director" of Agar Corporation, Inc.; Girish Parikh individually; and Girish Parikh as a "Director" of SGM Corporation d/b/a V-J Electronic Assemblies.

The agreement states as follows.

3. With the exception of the obligations of the Parties expressly referenced in this Mutual Release and Settlement Agreement, Agar hereby RELEASES, ACQUITS and FOREVER DISCHARGES, and by these presents does hereby RELEASE, ACQUIT and FOREVER DISCHARGE, [Girish] Parikh and V-J and their officers, directors, shareholders, employees, successors, and assigns, agents, attorneys, and any and all legal and business entities or affiliates associated with [Girish] Parikh and V-J, from any and all claims, demands, causes of action, losses, liabilities and expenses of whatever nature . . . arising . . . in connection with or related to the Lawsuit, the events and transactions which are the subject matter of the Lawsuit, and all actions and transactions which have taken place prior to the date of this Agreement.

. . .

7. This Agreement may be pled as a full and complete defense to and may be used as a basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted by any Party against another Party they have released hereby. In the event any Party initiates such action, suit or other proceeding, the Party against whom such action, suit or other proceeding has been instituted, shall be entitled to recover from the Party instituting such action, suit or other proceeding, all costs, attorneys' fees and expense incurred in connection with same.

---

[3] Although they share a common surname, Girish Parikh and Suresh Parikh are not related.

. . .

9. Each Party warrants and represents that it is the owner of any causes of action hereby released and the proper party to give a release thereof. Each Party further warrants and represents that it is legally competent to execute this Agreement and each signatory below warrants and represents that they are authorized to execute this Agreement. Each Party also understands that this is a full, final and complete settlement and release and that the consideration described herein is all the consideration to be given by each Party hereto.

. . .

11. Each Party further understands and agrees that this Agreement is not executed by any Party hereto based upon any representation, statement or warranty not specifically set forth in this Agreement, that this instrument constitutes the entire agreement and understanding between the Parties, and that unless otherwise set forth herein, no party has relied on any other representations, written or otherwise, made to it by any other party to this Agreement.

12. Each Party acknowledges that it has read this Agreement and has received the advice of its counsel with respect thereto, and that it executes this Agreement voluntarily and with full knowledge of its significance.

According to Electro Circuits and Suresh Parikh, they are "legal and business entities or affiliates associated with [Girish] Parikh and V-J" who were released by Agar in paragraph 3 and who are entitled to attorney's fees from Agar under paragraph 7 "as a result of [Agar] . . . bringing this case in violation of the Release." Electro Circuits and Suresh Parikh point to portions of the record that, according to them, establish that they are "considered 'affiliates' or business entities associated with [Girish] Parikh and V-J . . . ." At a minimum, Electro Circuits and Suresh Parikh contend the record raises a fact issue regarding their status as "affiliates" of the individuals and entities released in paragraph 3.

According to Agar, records from the Texas Secretary of State establish that

19

Electro Circuits and Parikh are not "legal and business entities or affiliates" of the individuals and entities released in paragraph 3; the December 2009 release was not intended to release claims against Electro Circuits and Suresh Parikh, who were not sued until November 2011; the release language does not identify Electro Circuits and Parikh with sufficient particularity; and Electro Circuits and Suresh Parikh cannot obtain attorney's fees under paragraph 7 even if claims against them were released in paragraph 3.

We apply well-settled law in evaluating these contentions. A release is a writing that discharges a duty or obligation owed to one party to the release; the discharge can occur immediately, or upon the occurrence of a condition. *See Nat'l Union Fire Ins. Co. of Pittsburgh v. Ins. Co. of N. Am.*, 955 S.W.2d 120, 127 (Tex. App.—Houston [14th Dist.] 1997), *aff'd sub nom. Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co.*, 20 S.W.3d. 692 (Tex. 2000). As applied to a claim or cause of action, a release extinguishes the claim or cause of action. *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993). A release is a contract subject to the rules governing contract construction. *See Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990).

The court's primary concern in construing a written contract is to ascertain the parties' true intentions as expressed in the instrument, which are discerned primarily by reference to the contract's words. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *Nat'l Union Fire Ins. Co. of Pittsburgh*, 955 S.W.2d 127. Courts should examine the entire writing in an effort to harmonize and give effect to all provisions so that none are rendered meaningless. *Coker*, 650 S.W.2d at 393; *Nat'l Union Fire Ins. Co. of Pittsburgh*, 955 S.W.2d at 127. No single provision taken alone should be given controlling effect; all provisions must be considered with reference to the entire contract. *Coker*, 650 S.W.2d at 127.

20

To be effective, a release must mention the claim to be released. *See Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex. 1991). General, categorical releases must be construed narrowly. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 422 (Tex. 1984); *Baty*, 63 S.W.3d at 850 n.7.

The Texas Supreme Court has rejected the contention that "a party who releases a claim and later files suit on that claim necessarily breaches the release agreement." *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 428 (Tex. 2015) (per curiam). The court likewise has rejected an effort to read "a covenant not to sue into a release that does not include such a promise." *Id.* A release provides an affirmative defense if a future suit is filed upon a released claim even if there is no accompanying covenant not to sue or provision authorizing recovery of attorney's fees. *See id.* at 428-29.

Applying these standards to the release agreement at issue here, we conclude that Electro Circuits and Suresh Parikh misplace their reliance on paragraph 7 as a basis for recovering attorney's fees. This conclusion applies even if we assume for argument's sake that Electro Circuits and Suresh Parikh are "legal and business entities or affiliates associated with" Girish Parikh and V-J, and that they were released by Agar in paragraph 3. We reach this conclusion because the differing language used in paragraphs 3 and 7 demonstrates that not all persons or entities released by Agar in paragraph 3 are authorized to seek attorney's fees against Agar under paragraph 7.

The release defines the "Parties" as Agar, Girish Parikh, and SGM Corporation d/b/a V-J Electronic Assemblies. The release does not define the term "Party" in the singular.

Electro Circuits and Parikh invite us to read the term "Party" used in paragraph 7 to encompass "affiliates" so that "affiliates" can seek attorney's fees.

21

Under this reading, each of the "affiliates" referenced in paragraph 3 is a "Party" who "shall be entitled to recover" attorney's fees under paragraph 7 if Agar sues them.

We decline this invitation in light of the release's unambiguous language. The release does not define "Party" or "Parties" to include "any and all legal and business entities or affiliates associated with" Girish Parikh and V-J. Rather, this quoted "affiliates" phrase appears in paragraph 3 to identify the persons and entities being released by Agar. This quoted "affiliates" phrase also appears in paragraph 4, the mirror-image provision by which Girish Parikh and V-J mutually release Agar along with "any and all legal and business entities or affiliates associated with Agar . . . ." This quoted "affiliates" phrase appears nowhere else in the release.

In contrast to the release provisions in paragraphs 3 and 4, the attorney's fee language in paragraph 7 omits this quoted "affiliates" phrase; this portion of paragraph 7 addressing attorney's fees applies only to "the Party against whom such action, suit or other proceeding has been instituted" and "the Party instituting such action, suit or other proceeding . . . ." The "Parties" are Agar, Girish Parikh, and SGM Corporation d/b/a V-J Electronic Assemblies. This difference demonstrates that paragraph 7's scope with respect to attorney's fees is narrower than paragraph 3's scope with respect to a release.

Paragraph 7's narrower scope with respect to attorney's fees comports with other release provisions that specify actions by a "Party" but not "affiliates" of a Party. For example, paragraph 9 states as follows: "Each Party further warrants and represents that it is legally competent to execute this Agreement . . . ." Paragraph 9 continues: "Each Party also understands . . . that the consideration described herein is all the consideration to be given by each Party hereto." Electro

22

Circuits and Suresh Parikh neither executed the release as asserted "affiliates" nor provided consideration. Similarly, the references in paragraphs 11 and 12 to execution of the release by a "Party" also do not encompass asserted "affiliates" Electro Circuits and Suresh Parikh because they executed nothing.[4]

The upshot is that paragraph 7 authorizes attorney's fees only for a subset of the universe of persons and entities released by Agar under paragraph 3. This circumstance fits with the supreme court's recognition that a release by itself is not equivalent to a covenant not to sue, and that creation of such a covenant requires express language to that effect. *See Nat'l Prop. Holdings, L.P.*, 453 S.W.3d at 428.

We overrule the issues raised in the cross-appeal of Electro Circuits and Parikh.

Accordingly, we affirm the trial court's judgment.


/s/     William J. Boyce
        Justice



Panel consists of Chief Justice Frost and Justices Boyce and Wise.

---

[4] We reject the contention of Electro Circuits and Parikh that Agar waived its ability to rely on the release's express terms in the trial court. In its August and September 2014 summary judgment motions on attorney's fees, Agar expressly argued that Electro Circuits and Parikh could not obtain attorney's fees under the release because they were not parties entitled to fees under the release. Agar raised the same contention in its response to the June 2014 summary judgment motion filed by Electro Circuits and Parikh.

23